972 F.2d 342
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
23 WEST WASHINGTON STREET, Inc., Plaintiff-Appellant,
v.
CITY of Hagerstown, Maryland, Defendant-Appellee.
 No. 91-1879.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 10, 1992
Decided: August 4, 1992
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. M. J. Garbis, District Judge. (CA-90-2443-MJG)
 ARGUED: Howard J. Schulman, Baltimore, Maryland, for Appellant.
 Daniel Karp, Allen, Johnson, Alexander & Karp, Baltimore, Maryland, for Appellee.
 ON BRIEF: Robert E. Kuczynski, Edward L. Kuczynski, Kuczynski & Kuczynski, Hagerstown, Maryland, for Appellee.
 D.Md.
 Affirmed.
 Before RUSSELL, MURNAGHAN, and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 23 West Washington Street, Inc., the operator of an adult bookstore in Hagerstown, Maryland, filed this action under 42 U.S.C. § 1983, seeking (1) a declaratory judgment that a Hagerstown city ordinance restricting the location of adult businesses violates the First and Fourteenth Amendments and (2) an injunction prohibiting its enforcement. It now appeals from a summary judgment entered against it by the district court. We affirm.
 
 
 2
 In April 1987, the Coalition of Community Values proposed an amendment to the zoning ordinance of Hagerstown, Maryland, modeled on Detroit, Michigan's ordinance regulating the location of adult businesses. Public and private hearings were held before the Hagerstown Planning Commission in December 1987 and January and February 1988 and before the Hagerstown City Council in April, May, June, August and September 1988. During these hearings, the Coalition of Community Values argued that the presence of adult businesses in the center of town was inconsistent with the city's plans for improving the downtown, and it submitted a summary of studies conducted in several cities concerning negative effects of adult businesses on local communities. It also submitted a copy of an order issued by the Circuit Court for Washington County, Maryland, enjoining 23 West Washington Street from selling a substance allegedly commonly used to dilute cocaine. Many citizens submitted oral and written statements inveighing against pornography and calling for the removal of the two adult bookstores in town. Other citizens registered their concerns about crime in the vicinity of the bookstores and their deleterious effect on the value of neighboring real estate. Despite public notice in local newspapers, no objection to the proposal to regulate the location of adult businesses was ever raised.
 
 
 3
 On September 6, 1988, the Mayor and City Council of Hagerstown approved the proposal and amended the city's zoning ordinance so as to forbid the use of land for "adult book stores," "adult motion picture theaters," and "adult mini motion picture theaters" in areas zoned C1 (commercial local), C-3 (commercial central) and C-4 (regional shopping center), allowing such uses only in districts zoned C-2 (commercial general) and only if not within 1000 feet of churches, schools, hospitals, nursing homes, parks and public multifamily dwellings. The ordinance also requires that nonconforming adult businesses "be removed by two (2) years from the effective date of the ordinance," which was October 6, 1988.
 
 
 4
 Since 1980, 23 West Washington Street has operated an adult bookstore selling books, periodicals, novelties, lingerie, films and other materials in downtown Hagerstown in an area designated C-3 under the city's zoning ordinance. Because the store falls within the zoning ordinance's definition of "adult bookstore,"* which is prohibited in areas zoned C-3, it was faced with the ordinance's requirement of relocating or closing down if it wished to continue as an adult bookstore. In September 1990, it sued the City of Hagerstown for declaratory and injunctive relief, alleging that the ordinance violates its First Amendment right to free speech.
 
 
 5
 In response to Hagerstown's motion for summary judgment, which incorporated the legislative record, the bookstore argued, on the basis of the legislative history, that there were disputes about whether the ordinance's purpose was suppression of pornographic communication, whether the ordinance does suppress it in downtown Hagerstown, and whether the ordinance was narrowly tailored. A magistrate rejected all of these arguments, because "the predominant concerns motivating the enactment ... were the preservation of the quality of the City's neighborhoods, the restoration of the quality of the downtown commercial district, and the prevention of crime and drug abuse." After the city had corrected an apparent typographical error in its ordinance, which would effectively have banned all adult businesses, the district court adopted the magistrate's report and ordered summary judgment for Hagerstown.
 
 
 6
 The First Amendment's protection of free speech extends to the sale of non-obscene, sexually explicit materials. See Roth v. United States, 354 U.S. 476, 487-88 (1957). It has long been held, however, that "government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication.' " Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984)). In City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986), the Supreme Court treated as such a contentneutral time, place, or manner restriction a municipality's zoning ordinance restricting the location of adult movie theaters, because it was justified as an attempt to combat the "secondary effects" of such businesses on crime, retail trade, property values and the quality of urban life generally. 475 U.S. at 48-49. The decision in Renton largely determines the result in this case.
 
 
 7
 As did the city of Renton, Hagerstown justifies its restriction of adult businesses to only some areas of the city as an attempt to combat secondary effects of adult businesses on the quality of urban life, particularly in downtown Hagerstown. 23 West Washington Street does not dispute that a regulation with this justification would be content-neutral under Renton, since it does not refer to the content of the protected speech. See 475 U.S. at 48. Rather, its principal argument is that Hagerstown's purpose was not, in fact, to combat secondary effects of adult businesses, but to suppress free speech in the form of sexually explicit materials.
 
 
 8
 Although the resolution amending Hagerstown's zoning ordinance to include the new restrictions did not include an explicit statement of purpose, such a statement is not required to survive attack under the First Amendment. See Barnes v. Glen Theatre, Inc., 111 S.Ct. 2456 (1991) (upholding a state statute against First Amendment attack despite absence of explicit statement of purpose and any legislative history). There is no question that Hagerstown's Planning Commission and City Council were presented with studies by other cities of the secondary effects of adult businesses and with statements by various citizens about increased crime and decreased property values near the existing adult businesses in Hagerstown. And, contrary to the assertion of 23 West Washington Street, Hagerstown did not need to conduct its own studies of the effects caused by the two existing adult businesses in Hagerstown, but could rely on reasonably relevant studies conducted by other cities. Renton, 475 U.S. at 51-52.
 
 
 9
 23 West Washington Street argues nevertheless that Hagerstown was reacting to the many private citizens supporting the ordinance who expressed their distaste for the adult businesses in Hagerstown and for pornography generally. There is no evidence in the record, however, that the legislators themselves acted on a distaste for pornography because of its content. Even assuming that the citizens' motives, to the extent driven by speech content, are to be imputed to legislators, courts will ordinarily not hold legislation serving an otherwise adequately supported legitimate purpose unconstitutional merely because some legislators may harbor illicit motives. See Renton, 475 U.S. at 47-48 (upholding restrictive ordinance at summary judgment despite "motivating factor" to restrict First Amendment speech); D.G. Restaurant Corp. v. City of Myrtle Beach, 953 F.2d 140, 146-47 (4th Cir. 1991).
 
 
 10
 23 West Washington Street also contends that the amended ordinance is not "narrowly tailored" to serve a proper time, place, or manner restriction, see Ward, 491 U.S. at 798, because Hagerstown considered but rejected proposals to include "grandfather clauses" for the two existing adult bookstores and to allow special exceptions. Neither of these complaints has merit. "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, ... the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." Id. at 800. To the extent either of the rejected alternatives would have permitted the unchanged operation of the existing adult bookstores to continue downtown, it would have severely undercut the purpose of the ordinance to reduce the secondary effects of adult businesses in downtown Hagerstown. Rather than require the bookstores to change their operations, Hagerstown merely required them to move, after an adequate two-year period in which to find new locations. Cf. Hart Book Stores, Inc. v. Edmisten, 612 F.2d 821, 830 (4th Cir. 1979), cert. denied, 447 U.S. 929 (1980) (upholding a law criminalizing the operation of more than one adult business in one building after a sixmonth amortization period). Since strict scrutiny is not required for content-neutral time, place, or manner restrictions, see Ward, 491 U.S. at 798-99 n.6, we will not second-guess Hagerstown's reasonable choice between adequate alternatives.
 
 
 11
 Under the holding of Renton permiting a valid, content-neutral time, place, or manner restriction on the location of adult bookstores, we conclude that the district court properly granted summary judgment in this case in favor of Hagerstown.
 
 AFFIRMED
 
 
 *
 The definition of "adult bookstore" is nearly identical to that used in the ordinance upheld in Young v. American Mini Theatres, Inc., 427 U.S. 50, 53-54 (1976), and 23 West Washington Street does not object to it